FILED

2005 Nov-17  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| DONALD H. MELVILLE | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | CV-04-J-3179-NW |
| v. | ) | |
| | ) | |
| NATIONAL LINEN SERVICE, | ) | |
| A DIVISION OF NATIONAL | ) | |
| SERVICE INDUSTRIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Currently pending before the court is the defendant's motion for summary judgment (doc. 15), memorandum and evidence in support thereof (docs. 16 and 17), to which the plaintiff responded (doc. 19). The defendant also submitted a reply brief in response to plaintiff's brief in opposition to summary judgment (doc. 23). The court has reviewed all of the pleadings and briefs in support of and in opposition to the motion for summary judgment.

### I. Factual Background

Plaintiff alleges that defendant, his former employer, terminated his employment in violation of Title VII of the Civil Rights Act of 1964[1] and the Age Discrimination in Employment Act ("ADEA").[2] Plaintiff's date of birth is June 28,

---

[1] 42 U.S.C. §§ 2000e, *et seq.*

[2] 29 U.S.C. §§ 621, *et seq.*

1949, and he was fifty-four years old when the defendant fired him.  Melville Depo.

6.  He is also a Caucasian.  Melville Depo. 157.

The defendant, National Linen Service, Inc., hired Plaintiff as a Client

Relations Manager for the Florence, Alabama plant on September 2, 1997.  Melville

Depo. 40.  Plaintiff was 47 years old when the defendant hired him.  The defendant's

Florence, Alabama plant launders linens for healthcare facilities, restaurants, and

hotels.  Kelley Decl. ¶ 3.  Plaintiff served as Client Relations Manager until

September 1999, when he was transferred to the Receiving Supervisor position.

Melville Depo. 96-97.  Plaintiff retained the same salary (Melville Depo. 97-98);

however, his car allowance and milage compensation were not continued, because he

was no longer traveling.  Melville Depo. 98.  Plaintiff later discovered that the

Receiving Supervisor position did not continue the 401K matching program he had

as the Client Relations Manager.  Melville Depo. 120-121.  Plaintiff testified he was

under the impression that this transfer was only temporary (Melville Depo. 109-110);

however, he realized this change was permanent when the defendant moved another

employee (Carol Wilson, age 27) to the Client Relations Manager position.  Melville

Depo. 99, 110.  Plaintiff claims that General Manager, Ron Brumbalow, told him that

he wanted to keep Plaintiff as the  Receiving Supervisor because the department was

setting records under Plaintiff's control.  Melville Depo. 120.

Plaintiff and other managers testified that the receiving department's

performance is of utmost importance to keeping the plant's flow consistent.  Melville

Depo. 116-118; Kelley Decl. ¶ 14;[3] Orr Decl. ¶10.[4]  Furthermore, the plaintiff testified that if the receiving department got backed up,  the rest of the plant could not do its job.  Melville Depo.  139.

Plaintiff received his first "Associate Corrective Action," along with a verbal reprimand on July 17, 2001, because the Receiving Department was not up to standard and plaintiff was not following directions.  Melville Depo. 134-136, 148. The plaintiff disagreed with the reasons for the reprimand.  Melville Depo. 135-136. Plaintiff testified that he did not believe that this reprimand was because of his age or race, but rather because of his alleged performance.  Melville Depo. 142.  Plaintiff received his second Associate Corrective Action report, dated September 11, 2001, for failing to follow a direct order from the plant manger, which resulted in delays, possible shortages, and overtime.  Melville Depo. 146.  In conjunction with this written warning, the plaintiff was suspended from work for two and a half days. Melville Depo. 149-150.  The plaintiff testified that he believed this suspension was because of his age and race.  Melville Depo. 151, 157.

On August 13, 2002, Plaintiff was yet again reprimanded, this time by a "Supervisor Corrective Action" report, for failure to follow procedures, which resulted in an alleged $3,300.00 loss of a customer's linens.  Melville Depo. 188-192.

[3]Larry Kelley has been plant manager since August 2002.  Kelley Decl. ¶ 4.

[4]Jerome Orr was plant manager of the Florence location from September 2000 to August 2002.  Orr Decl. ¶ 2.

A second Corrective Action notice was also issued August 13, 2002, for failing to follow flow procedures, which put other departments behind on daily production. Melville Depo. 194-195.

On August 26, 2002, plaintiff was issued a final written warning, which he signed. Melville Depo. 199-2000. Plaintiff testified he did not remember seeing the words "final written warning" on that document. Melville Depo. 200. The plaintiff testified he thought he was being reprimanded due to his race because he was the only white supervisor. Melville Depo. 205-206. He also thought the reprimands were age related. Melville Depo. 207.

Plaintiff was reprimanded again on November 19, 2003, by another "Supervisor Corrective Action" for failing to meet efficiency goals. Melville Depo. 212. Plaintiff testified that this reprimand was because of his age and his race. Melville Depo. 216-218. Later in that same month, plaintiff received a final written warning because the receiving department's efficiencies were at 88.21%, which was below the acceptable standard of 95%. Melville Depo. 221-222. Overall, plaintiff received nine corrective actions between July 2001 and November 2003. Melville Depo. 231. Plaintiff contends that each of these reprimands were given because of his age and race. Melville Depo. 231.

Plaintiff alleged that that the defendant had four production supervisory positions and that he was the only white production supervisor. Melville Depo. 157. Shelnutt testified that during plaintiff's employment, the defendant had four

4

production supervisory positions (Receiving, Washroom, Flatwork and Loadbuilding), as well as a and Garment Manager position, which is also considered a "production" position.[5]  Shelnutt Decl. ¶ 10-11.  From February 1996 until present, the washroom Supervisor has been Joe Goodloe, an African-American male, whose date of birth is September 17, 1958.  Shelnutt Decl. ¶ 12.  Dora Vinson served as the Flatwork Supervisor from March 1997 until her retirement in August 2004.  She is an African-American female, whose date of birth is June 14, 1944.  Shelnutt Decl. ¶ 13.  Vinson was replaced by Murray DeGraffenreid, a Caucasian male ,whose date of birth is October 24, 1959.  Shelnutt Decl. ¶ 14.  Shirley Webster has been the Loadbuilder Supervisor since March 2001.  She is an African American female, whose date of birth is June 7, 1985.  Shelnutt Decl. ¶ 15.  The Garment Manager position was first held by Larry Kelley (Caucasian, date of birth November 30, 1950), then by Farron Bevis (Caucasian, date of birth September 5, 1958).  Bevis was replaced by Jessica Crosslin (Caucasian, date of birth November 20, 1975), then by Jimmie Grayson (Caucasian, date of birth November 6, 1955) until the position was eliminated.  Shelnutt Decl. ¶ 16.

---

[5]Mollie Shelnutt has been the Human Resources Manager at defendant's Florence plant since June 2002.  Shelnutt Decl. ¶ 2.

All of the reprimands issued to the plaintiff were signed by Mr. Kelley, Mr. Brumbalow, Mr. Orr and Ms. Shelnutt.[6]   Melville Depo. 210-211.   All of those individuals are white.   Melville Depo. 210.

Plaintiff was terminated on April 1, 2004, by Brumbalow, for "hot and cold and unacceptable" performance.   Melville Depo. 262, 264.   The plaintiff declined the severance package which was offered to him.   Melville Depo. 262.   Defendant testified that plaintiff was terminated due to poor work performance.   Shelnutt Decl. ¶ 9; Brumbalow Decl. ¶ 9, 14.   Furthermore, decision makers for defendant testified that neither plaintiff's age nor his race was a factor in any of plaintiff's disciplinary actions and/or his termination.   Shelnutt Decl. ¶ 29; Kelley Decl. ¶ 30; Orr Decl. ¶ 16, 19; Brumbalow Decl. ¶ 15.

Plaintiff alleges as evidence of age discrimination that Mr. Carroll Hart (the former Plant Manager) said he did not want to have "grayed-haired people meeting with the customers after promoting Carol Wilson (age 27) to Client Relations Manager.   Melville Depo. 99, 102.   He also asserts that someone called him "old man" and that he reported this to Larry Kelley, who said that he would talk with the individual who made that comment.   Melville Depo. 128, 202-203, 244-245.   Plaintiff contends that as the only white production supervisor, he was not given as much support as the African American supervisors.   Melville Depo. 247.   Plaintiff testified

---

[6]Ronald Brumbalow was General manager of the Florence plant during the relevant time period.   Brumbalow Decl. ¶ 3.

that he felt that Mr. Kelly and Mr. Orr wanted to see him fail because of his age. Melville Depo. 257-258.  Plaintiff also further testified that his race was another reason why Mr. Kelley and Mr. Orr wanted him to fail.[7]  Melville Depo. 258.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the

---

[7]Both Mr. Orr and Mr. Kelley are Caucasian.  Orr Decl. ¶ 5, Kelley Decl. ¶ 5.

'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case. . . . A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

Additionally, the court may disregard affidavits submitted for summary judgment which contradict material facts given in an earlier sworn statement.  Under Eleventh Circuit precedent, the court may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony.  *McCormick v. City of Fort Lauderdale*, 333 F.2d 1234, 1240 n. 7 (11th Cir. 2003).  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such

an issue with an affidavit that merely contradicts, *without explanation*, previously given clear testimony." *Id., citing Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

### III. Legal Analysis

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations, nor weigh the parties' evidence. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.2d 1305, 1311 (11th Cir. 2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). With these standards in mind, the court considers the plaintiff's claims. The plaintiff asserts the defendant terminated him for discriminatory reasons, because of his age (over forty), and his race (Caucasian).

A plaintiff may use either direct evidence, circumstantial evidence, or statistical evidence to establish discriminatory intent. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference

or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989). The plaintiff has offered no direct proof of such discrimination, with the possible exception of the comment that plaintiff was an "old man," made by an employee subordinate to plaintiff. The Eleventh Circuit has found that "not every comment concerning a person's age presents direct evidence of discrimination. *Carter*, 870 F.2d at 582, citing *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.1998). The Court in *Young* "made clear that remarks merely referring to characteristics associated with increasing age, or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination." *See Carter*, 870 F.2d at 582. "Rather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." *Id.* In fact, the Eleventh Circuit has previously held that the comment "old man" does not constitute direct evidence of age discrimination. *Schweers  v. Best Buy, Inc.*, 132 Fed. Appx. 322, 324 (11th Cir. 2005). The court finds that the alleged "old man" comment by a subordinate is not sufficient by itself to establish a prima facie case of discrimination by the defendant.

Therefore, the court relies on the *McDonnell Douglas* framework to evaluate the plaintiff's circumstantial evidence of age and race discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). For both Title VII and ADEA claims, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802; *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.

2000).  "One method a plaintiff can use to establish a prima facie case for an ADEA violation is by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Chapman*, 229 F.3d at 1024.

To establish a prima facie case that he was discriminated against by defendant on account of his race, the plaintiff must prove that (1) he belongs to a racial minority; (2)  he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside the protected classification more favorably; and (4) he was qualified for his job.  *Holifield v. Reno,* 115 F.3d 1555, 1562-63 (11th Cir.1997); *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000).

Under either standard, assuming the employee meets his burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.  *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

Because the plaintiff was terminated and asserts that he was replaced by a younger black male, the court will assume for purposes of this opinion that the plaintiff has satisfied his prima facie case on both of his claims.  Therefore, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its actions.  Here, the evidence clearly supports the defendant's assertion that the plaintiff was terminated for his poor performance as the Receiving Supervisor.

The record abundantly supports defendant's position that the plaintiff failed to perform his job in an adequate manner.  *See e.g.*, Shelnutt Decl. ¶ 7 a-o; Kelley Decl. ¶ 11; Orr Decl. ¶ 13.  Plaintiff failed to meet the objective job requirements of the Receiving Supervisor position.  Plaintiff, Brumbalow, Kelley and Orr all testified that the Receiving Department is critical to the rest of the plant remaining on schedule,

mainly that if the Receiving Department gets backed up then the entire plant gets backed up.  Melville Depo. 117-118; Brumbalow Decl. ¶ 11; Kelley Decl. ¶ 14; Orr Decl. ¶ 10. Kelley, Brumbalow and Orr all testified that they repeatedly observed numerous problems in the Receiving Department under plaintiffs' supervision. Kelley Decl. ¶ 18; Brumbalow Decl. ¶ 11-12; Orr Decl. ¶ 14-15,18.

"[W]here the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment in the absence of other evidence." *Holifield v. Reno*, 115 F.3d 1555, 1565 (internal citations omitted).  It is clear the plaintiff received numerous reprimands, all related to the plaintiff's poor performance as Receiving Supervisor. Shelnutt Decl. ¶ 7a-o.  *See also* Orr Decl. ¶ 14-15.  Therefore, the plaintiff's assertion that he was doing a good job and that every reprimand was due to extenuating circumstances is insufficient to rebut the defendant's legitimate, non-discriminatory reasons for its actions.

Furthermore, the plaintiff's superiors, like the plaintiff, are white.  They were also within the same protected age group as the plaintiff.  "Where decision-makers are also members of a protected class, the plaintiff faces a greater burden." *Moore v. Ala. Dep't of Corrs.*, 137 Fed. Appx. 235, 239 n. 4 (11th Cir. 2005).  Plaintiff was a member of the protected age group (Melville Depo. 6) when the defendant hired

him in 1997.  Melville Depo.  40.  Brumbalow, who at the time was the General

Manager for the defendant (Brumbalow Decl. ¶ 3), was responsible for hiring and

terminating the supervisory personnel at the Florence Plant.  Brumbalow Decl. ¶ 4.

Brumbalow is a Caucasian male (Melville Depo. 52) born February 3, 1955.  Shelnutt

Decl. ¶ 17f.  Furthermore, Orr and Kelley were also in the protected age group and

Caucasian males.  Shelnutt Decl. ¶ 16, 17 e-f.

Additionally, Brumbalow both hired and terminated the plaintiff.  The Eleventh

Circuit has held that when the same individual is responsible for hiring and firing,

there is a "permissible inference that no discriminatory animus" motivated his

decision.  *See Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1442-1443 (11th Cir.

1998); citing *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995)

(holding that "[a]n individual who is willing to hire and promote a person of a certain

class is unlikely to fire them simply because they are a member of that class.  This

general principle applies regardless of whether the class is age, race, sex, or some

other protected classification.").  Because Brumbalow is within both protected

classifications claimed by plaintiff, and hired and fired the plaintiff, there is a

permissible inference that firing of the plaintiff was not motivated by discriminatory

factors.

Brumbalow, who made the ultimate decision to terminate the plaintiff, testified

that plaintiff's age and race "played no part whatsoever in the decision to terminate

his employment with National Linen Service," (Brumbalow Decl. ¶ 15) and that plaintiff's "job performance as Production Supervisor-Receiving was inadequate and inconsistent." Brumbalow Decl. ¶ 9. *See also* Orr Decl. ¶ 16 (stating that plaintiff's age and race were not a factor in his decision to issue performance related reprimands); Kelley Decl. ¶ 30 (stating that age and race were not a factor in his decision to issue performance related reprimands).

## IV. Conclusion

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on both the plaintiff's age and race discrimination claims is due to be granted.

**DONE** and **ORDERED** this the 17th  day of November, 2005.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE